**STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| JUAN MEJIA, MATTHEW BORDY**,** and all others similarly situated, <br><br>           Plaintiffs, <br> v. <br><br> TEXT, INC. (f/k/a LiveChat Services), <br><br>           Defendant. | **Civil Case No. _____** <br><br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiffs Juan Mejia, Matthew Bordy, and all others similarly situated (collectively, "Plaintiffs"), individually and on behalf all others similarly situated, bring this class action against Defendant Text, Inc. ("Defendant" or "Text"), formerly known as LiveChat Services, for violation of the Florida Security of Communications Act ("FSCA"), Fla. Stat. § 934.01 *et seq*., and related common law claims, and allege as follows:

## I.       <u>INTRODUCTION</u>

1. In an era in which consumers increasingly rely on online chat features to communicate with businesses regarding purchases, services, account details, financial or medical issues, and other sensitive matters, the privacy of those communications is of paramount importance. Consumers reasonably expect that the contents of their private online conversations will be shared only with the business with which they intend to communicate; not secretly intercepted, accessed, or exploited by an undisclosed third party.

2. Defendant Text is a technology company that markets and provides customer-service chat software and related services to businesses throughout the United States, including businesses operating websites accessible to consumers in Florida. Defendant's software is

embedded into third-party websites and enables website visitors to communicate with those businesses through its "LiveChat" interface platform.

3. Unbeknownst to the consumers who use this chat function, however, Text does far more than merely facilitate communications between consumers and the businesses they believe they are speaking with.

4. Instead, Text has engineered LiveChat to operate as a sophisticated communications interception apparatus masquerading as a customer service tool.

5. When consumers type a message into the LiveChat chat window from their personal device (e.g. computer, tablet, cell phone), Text contemporaneously intercepts and acquires the contents of the consumers' electronic communication in real time—including every keystroke, message, and piece of information the consumer transmits—before, during, and after the message is delivered to the business on the other end of the conversation.

6. Indeed, Defendant's "Sneak Peek" feature of its LiveChat software allows Text to intercept the entirety of consumers' communications, including every abandoned thought, every deleted sentence, and every reconsidered word as they are being typed *and even if the consumer never sends the message at all*.

7. Upon information and belief, Text does not merely intercept these communications for passive storage, it actively exploits this data for its own commercial gain including but not limited to training its artificial intelligence and machine learning models, data collection, product improvement, and other commercial uses.

8. The exploitation does not end there.

9. Through its "webhook" system, Text automatically and contemporaneously discloses the contents of consumers' communications to an indeterminate number of third-party

1666907

applications including customer relationship management platforms, marketing automation software, data analytics services, and other commercial integrations: none of whom the consumers ever intended to contact.

10.     The consumers who engage with Text's LiveChat functions have no reason to know, and are not informed, that Text, a hidden third party with no relationship to the consumer, contractual or otherwise, is secretly acquiring the contents of their private exchanges with businesses through its embedded chat technology.

11.     Consumers reasonably believe that their chat communications are solely with the business whose website they are visiting. They do not know that a separate corporate entity is surreptitiously acquiring their communications in real time for its own commercial purposes.

12.     Plaintiffs and the putative Class members were never informed that Defendant would intercept the contents of their chat communications in real time, nor did they consent to such interception.

13.     At no point did Plaintiffs authorize or consent to Text's, a third party to the communications, acquisition of the contents of their private exchanges with businesses through Defendant's embedded chat technology.

14.     Nor did Plaintiffs and the putative Class members authorize or consent to Text's use of their private conversations for training artificial intelligence and machine learning models or other commercial exploitation.

15.      Defendant's conduct strikes at the heart of the privacy interests that the Florida Legislature sought to protect when it enacted the FSCA. The FSCA is among the most protective wiretapping statutes in the nation—requiring the consent of all parties to record communications

3

and reflecting Florida's longstanding commitment to safeguarding the privacy of its residents' communications.

16.     The statute provides, in pertinent part, that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication" is liable for damages to each person whose communications are intercepted. Fla. Stat. § 934.03(1)(a).

17.     Indeed, the right to communicate privately, free from secret surveillance and interception by unseen third parties, is a fundamental right that the FSCA was designed to preserve.

18.     Through the actions alleged herein, Defendant knowingly and intentionally violated the privacy rights of Plaintiffs and Class members by intercepting their electronic communications without authorization or consent. Defendant's conduct is precisely the type of clandestine surveillance that the Florida Legislature criminalized and made actionable under the FSCA.

19.     Plaintiffs bring this action on behalf of themselves and all Florida residents whose electronic communications were intercepted by Text via the LiveChat software and seek to hold Text accountable for its systematic violations of the FSCA.

## II.     THE PARTIES

20.     Plaintiff Juan Mejia is a Florida resident and citizen residing in Davie, Florida. Plaintiff Mejia, while located and Florida, visited SunbeltRentals.com and GoldstarTool.com from his personal device on at least one occasion and used Text's live chat function to communicate with customer service agents, including as recently as March of 2026. During each visit, Plaintiff's electronic communications within the LiveChat software, including communications related to product inquiries and account information, were intercepted in real time by Text. Plaintiff was

1666907

unaware of this interception and did not consent to the disclosure of his chat communications to Text.

21.   Plaintiff Matthew Bordy is a Florida resident and citizen residing in Fort Lauderdale, Florida. Plaintiff Bordy, while located in Florida, visited JJsHouse.com and PointClickCare.com from his personal device on at least one occasion and used Text's live chat function to communicate with customer service agents, including as recently as March of 2026. During each visit, Plaintiff's electronic communications within the LiveChat software, including communications related to product inquiries and account information, were intercepted in real time by Text. Plaintiff was unaware of this interception and did not consent to the disclosure of his chat communications to Text.

22.   Defendant Text, Inc. (f/k/a LiveChat Services) is a Delaware corporation with its principal place of business at 101 Arch Street, 8th Floor, Boston, Massachusetts 02110. Text conducts substantial business in Florida, including by contracting with Florida-based businesses to provide LiveChat services to Florida consumers, and by providing LiveChat services to businesses outside Florida on websites accessed by Florida consumers.

23.   Text operates as a software-as-a-service ("SaaS") company offering business-to-business and business-to-consumer software products, including ChatBot (an AI customer service chatbot), HelpDesk (a work-ticket management application), and its flagship product, LiveChat, which integrates directly into their customers' business websites.

24.   Text is a subsidiary of Text S.A. (ul. Zwycięska 47, Wrocław 53-033, Poland), which is publicly traded on the Warsaw Stock Exchange with an approximate market capitalization of $250 million.

1666907

25. Text S.A. and Text are among the largest providers of live chat software globally, serving more than 40,000 business customers in over 150 countries, with annual revenues of approximately $87.45 million, the vast majority of which comes from Text's LiveChat software product. Approximately one-third of Text's revenue comes from its U.S. operations.

### III.      JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

27. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiffs are citizens of Florida; Defendant Text, Inc. is a citizen of Delaware (state of incorporation) and Massachusetts (principal place of business). Complete diversity therefore exists.

28. This Court has personal jurisdiction over Defendant under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(1), (2), and (6), because Defendant committed tortious acts within this state by intercepting Plaintiffs private communications from their personal electronic devices in Florida. Defendant has also caused injury to persons in this State though its acts and omissions outside this state, while its products were used or consumed within this state in the ordinary course of commerce, trade, or use. Defendant conducts substantial and continuous business in Florida, including by providing live chat software services to Florida businesses whose websites are accessed by Florida residents, and because the conduct giving rise to this action occurred in

1666907

substantial part in Florida. and caused injury to Plaintiffs and the putative Class members within Florida.

29.     Defendant purposely availed itself of the laws of the State of Florida by marketing and distributing its services within Miami-Dade County, Florida and the State of Florida. Defendant's purposeful availment of the privileges of doing business within the State and substantial, continuous, and systematic contacts with Florida render the exercise of jurisdiction by this Court over it permissible under traditional notions of fair play and substantial justice.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District, including Plaintiffs' use of the websites and the interception of Plaintiffs' electronic communications from those websites while Plaintiffs were located in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     Overview of Text's LiveChat Software

31.     Text offers its LiveChat software to business customers as a way to "[i]ncrease online sales," "[i]mprove customer satisfaction," and "[a]utomate customer service."

32.     Text engineered LiveChat as a combination of a basic customer service live chat function and a backend analytics tool.

33.     LiveChat integrates with its business customers' websites, allowing LiveChat to appear directly on the business websites and function as a tool that visitors may interact with directly to receive customer service assistance from the business.

34.     LiveChat, however, is run on Text's servers and not on servers of the businesses that consumers visit.

7

1666907

35.     Text's business customers pay a monthly or annual subscription to use the LiveChat platform on their website.

36.     Whenever a website visitor communicates through a website enabled with the LiveChat software, the website visitor's messages are contemporaneously intercepted and transmitted to Text's servers by the LiveChat software.

37.     Upon information and belief, Text then uses the messages to train its artificial intelligence and machine learning models, analyze customer behavior patterns, and improve its proprietary products. Text does so to gain a commercial benefit and advantage over its direct competitors.

38.     Indeed, growing market research indicates that the value of consumers' personal data can be quantified into a specific dollar amount that runs as high as hundreds, or even thousands, of dollars per consumer. *See, e.g.*, Kienzle, Martin G., *How much value are consumers giving away to feed the data economy?*, Medium, Aug. 15, 2021, https://medium.com/@kienzle/how-much-value-are-consumers-giving-away-to-feed-the-data-economy-b44438bf6657 (noting that the "aggregate value [of consumer data] is at a minimum $500 per person per year, and likely higher than $1000 per year"); *What Are Data Brokers – And What Is Your Data Worth?*, WebFX, https://www.webfx.com/blog/internet/what-are-data-brokers-and-what-is-your-data-worth-infographic/ (explaining that data brokering is a $200 billion industry and that, for example, **"[t]he average email address is worth $89 to a brand over time"**) (emphasis added); Stein, Lukas, *What your data is actually worth*, DataPods, Oct. 10, 2023, https://www.datapods.app/en-US/blog/what-your-data-is-actually-worth ("For example, general information about an individual, such as age, gender and location, has a price of around $0.0005 per person. The data of people who are looking for a car, a financial product or a holiday, is more

8

expensive. If you want to buy a car, companies pay around \$0.0021 for this information. The information that a woman is expecting a child is worth \$0.11.").

39.     Text's interception occurs through at least two independent, concurrent mechanisms.

40.     First, Text's servers function as a man-in-the-middle intermediary through which every message between a website visitor and Text's business' customers' customer service agents must pass, whereby Text will intercept the full contents of each message in real time.

41.     Second, Text's "Sneak Peek" feature intercepts the full text of website visitors' messages to Text's servers before the visitor has clicked "Send," and even if the visitor never clicks "Send" at all.

42.     Plaintiffs and the Class members were not informed, nor did they consent to having Text intercept their chats with the businesses they are communicating with.

43.     Each of these mechanisms independently constitutes interception of electronic communications and a violation of the FSCA.

44.     On information and belief, after Text intercepts the contents of website visitors' electronic communications, Text uses the contents of the intercepted electronic communications for their own commercial benefit including to train artificial intelligence and machine learning models, to analyze customer behavior patterns, and to improve Text's proprietary products all without consent or disclosure to website visitors.

45.     This constitutes an independent violation of the FSCA under Section 934.03(1)(d).

46.     Further, when Text's "webhook" system is enabled, Text also contemporaneously discloses the intercepted communications to additional third parties.

9

1666907

47. A "webhook" is a mechanism that shares data automatically from one app to another when a specified event occurs. In the context of Text's LiveChat software, the specified event is a website visitor sending a message within the LiveChat software.

48. When webhooks are enabled on Text's LiveChat software, whenever a website visitor sends a message (the event), that message is automatically shared (data sharing) with additional third parties.

49. Text does all of this without disclosing to website visitors and consumers that such interception, use, and disclosure to additional third parties is occurring, and without providing website visitors the option to opt out of the interception, use, or disclosure of their communications.

50. This disclosure of communications is an additional violation of the FSCA because LiveChat knows that the communications are obtained through interception of consumers' electronic communications.

**B.     Overview of Website Visitors' Interactions with LiveChat-Enabled Websites**

51. Text's LiveChat software integrates directly into its business customers' websites, and the chat interface appears directly on the business's website.

52. The Goldstar Tool website, visited by Plaintiff Juan Mejia, is one such website.

53. When a person visits www.goldstartool.com, the LiveChat software functions as an extension of the website and appears as a tool that a website visitor can click to initiate a chat with a Goldstar Tool customer service representative.

54. When a business, such as Goldstar Tool, contracts with Text to use its LiveChat software, a small icon bearing LiveChat's logo appears directly on the website.

10



55. When website visitors click on the icon, a chat box appears.



56. The LiveChat text box displays the message, "Welcome to our Goldstar Tool!" indicating that the website visitor will be communicating directly with business (Goldstar Tool).

11

1666907

57.     While the LiveChat text box does disclose that it is "Powered by LiveChat" it does not disclose that LiveChat will be surreptitiously intercepting the chat communications inputted by the website visitor from their personal electronic devices.

58.     When a website visitor inputs his or her name and email address into the LiveChat text box and clicks to start the chat, the chat screen opens, allowing the visitor to send messages directly to customer service representatives at Goldstar Tool



59.     At no time, does Text or the business disclose that communications transmitted through the LiveChat software will be intercepted or recorded by Text in real time or that the communications will be disclosed to third parties, or used for Text's own commercial purposes.

60.    At no time, does Text or the business ask the website visitor to consent to LiveChat's interception, recording, or disclosure of communications to third parties, or to the use of such communications for Text's own commercial purposes.

**C.    Text's Man-in-the-Middle Architecture**

61.    Text's LiveChat software maintains two connections simultaneously: one between the visitor's chat widget and Text's servers, and a second between Text's servers and the business's customer service agent. A diagram of the LiveChat software's basic flow is below.

62.    LiveChat's customer chat operates in the website visitor's web browser and establishes a connection to Text's servers, and the agent chat establishes a connection between the customer service agent and Text's server.

63.    Text operates as the man-in-the-middle whereby all communications between website visitors and the businesses run through Text's servers.

64.    Text's LiveChat messaging system maintains a continuous and contemporaneous record of the entire communication.

65.    Upon information and belief, as the communications pass through Text's servers they are intercepted in real time by Text and ultimately used by Text for its own commercial

1666907

benefits including to train artificial intelligence and machine learning models, to analyze customer behavior patterns, and to improve Text's proprietary products all without consent or disclosure to website visitors.

**D.      The Sneak Peek Feature and Pre-Transmission Interception**

66.      The Sneak Peek feature is among the most invasive aspects of the LiveChat software's interception architecture.

67.      The Sneak Peek function of LiveChat allows Text to intercept website visitors' electronic communications as the website visitors are typing and before the website visitors ever click send.

68.      Even if a website visitor never clicks send, the LiveChat software contemporaneously intercepts the message on Text's servers and transmits it to Text's business customers in real time.

69.      LiveChat's Sneak Peek function captures the entirety of website visitors' electronic communications, including unfinished thoughts and deleted text that the website visitor never intended to communicate to anyone.

70.      On information and belief, the electronic communications intercepted through LiveChat's Sneak Peek function are also used for Text's own commercial purposes including training artificial intelligence and machine learning models, analyzing customer behavior patterns, and improving Text's proprietary products.

71.      This constitutes real-time interception of electronic communication contents within the meaning of the FSCA.

14

1666907

**E.      Redistribution of Communications to Third Parties via Webhooks**

72.      Text's LiveChat platform includes a "webhook" system which is an automated mechanism that transmits data to external applications in real time whenever a specified event occurs.

73.      When webhooks are enabled, each time a website visitor sends a chat message, the LiveChat software simultaneously: (1) intercepts the communication without the website visitor's consent; and (2) discloses a copy of the communication to every third-party application registered to receive webhook notifications.

74.      These third-party recipients of electronic communications intercepted by LiveChat include, customer relationship management platforms, workplace communication tools, marketing automation software, data analytics services, and other commercial integrations selected by the business customer.

75.      The webhook system is not a passive logging function; it is an active, real-time redistribution mechanism that causes the contents of intercepted electronic communications to be disclosed to additional third parties contemporaneously with the website visitor's original transmission of the electronic communication.

76.      LiveChat's webhook functionality is designed as a feature which enables Text's business customers to build integrations and automate workflows by automatically disclosing intercepted electronic communications to third-party services which are not parties to the original conversation between the website visitor and Text's business customer.

77.      Text does not disclose to website visitors that their messages are being intercepted and redistributed to additional third parties.

15

1666907

78.     Text does not ask website visitors to consent to the disclosure of their electronic communications to additional third parties.

79.     Furthermore, website visitors have no means of preventing the interception and disclosure of their electronic communications once they initiate a chat session.

80.     Accordingly, website visitors' electronic communications are not only intercepted by Text's LiveChat software contemporaneously with transmission of the electronic communications, the communications are also contemporaneously and automatically disclosed to an indeterminate number of additional third parties without their knowledge or consent.

81.     Each such redistribution constitutes a separate and independent disclosure of the contents of an electronic communication within the meaning of the FSCA.

**F.     Use of Intercepted Data for Text's Own Commercial Purposes**

82.     Text's Terms of Use, Privacy Policy, and Data Processing Addendum with its business customers explicitly authorize Text to use, process, and exploit the data submitted to, created in, transmitted through, or stored in the LiveChat platform for Text's own commercial benefit.

83.     Specifically, Text's Terms of Use define "Client Data" as any data, including "Personal Data, that Text's business customers, their Users, and any End-User posts, uploads, shares, stores, *or otherwise provides through the LiveChat Services*." (emphasis added).

84.     Under this definition, Text's use of "Client Data" encompasses the full contents of website visitors' electronic communications transmitted through the LiveChat software— including all messages and any information shared during a chat session.

85.     Text's Data Processing Addendum expressly authorize Text to use and process Client Data for the purposes of providing, maintaining, and improving the LiveChat Services, as

1666907

well as for analysis, including training artificial intelligence ("AI") models and similar or related services and features.

86.     Text's Terms of Use, Privacy Policy, and Data Processing Addendum are agreements with Text's business customers.

87.     Website visitors are never informed of or asked to consent to any of these policies or terms when using the LiveChat software on Text's business customers' websites.

88.     Website visitors therefore do not consent to Text's use of their communications for AI training, service improvement, data analysis, or any other commercial purpose.

89.     Nor are website visitors informed that their electronic communications will be used by Text to train AI models, improve Text's products, or inform Text's business decisions.

90.     Text's commercial exploitation of website visitors' electronic communications—including using such communications to train AI models, improve services, and make business decisions—constitutes intentional "use" of the contents of intercepted electronic communications in violation of Fla. Stat. § 934.03(1)(d).

91.     Text's knowing and secret interception of consumers chat communications without their knowledge and consent and its commercial exploitation of those intercepted electronic communications, forecloses any defense that Text's conduct is lawful under the FSCA. *See e.g.*, 934.03(2)(a)1.

92.     Text's intentional interception of a consumer's LiveChat communications without consent, is not necessary for the rendition of its services. That is, Text could provide a chat function for consumers to communicate directly with businesses without intercepting , disclosing, using, or even viewing the electronic communications. *Id.*

17

93.     Text's commercial exploitation of website visitors' communications—including using intercepted data to train AI models, improve its products, make business decisions, and develop new services—is not a "necessary incident to the rendition of [Text's] service" of transmitting electronic communications, but rather a separate, profit-driven enterprise that falls squarely outside the scope of this exemption. *Id.*

### G.     Text's Third-Party Status and Lack of Consent

94.     Website visitors, like Plaintiffs and the putative Class members, use Text's LiveChat software from their personal electronic devices to chat with a particular business on its website.

95.     Plaintiffs and putative class members are not informed that Text, a separate and distinct third-party entity, is intercepting every electronic communication sent from their personal electronic devices through LiveChat, disclosing the intercepted electronic communications to additional third parties, and using those intercepted electronic communications for Text's own commercial benefit.

96.     Website visitors have no contractual relationship with Text, nor are their chat communications intended for or directed to Text.

97.     Rather, Plaintiffs' and website visitors' only relationship and intended recipient of their communication is with Text's business customers.

98.     In sum, Text is a third party to the electronic communications between website visitors and Text's business customers. Text: (i) intercepts all electronic communications sent through consumers personal electronic devices using the LiveChat software; (ii) discloses those electronic communications to additional third parties; and (iii) uses the intercepted

communications for its own commercial purposes including training of artificial intelligence models and improving Text's products and services.

**H.     Plaintiffs' Experience**

***1.  Plaintiff Juan Mejia***

99.     Through LiveChat, Text unlawfully intercepted, disclosed, and used the electronic communications of Plaintiffs and putative class members for its own commercial benefit.

100.    Plaintiff Juan Mejia visited the websites Goldstartool.com and Sunbeltrentals.com.

101.    Goldstartool.com and Sunbeltrentals.com are websites enabled with LiveChat.

102.    Plaintiff Juan Mejia accessed the LiveChat software from his personal electronic device to communicate with customer service agents working for Goldstartool.com and Sunbeltrentals.com.

103.    During those visits, Text intercepted the content of Plaintiff Mejia's electronic communications with Goldstartool.com's and Sunbeltrentals.com's customer service agents in real time.

104.    While using LiveChat on Goldstartool.com, Plaintiff Mejia was not asked to consent to Text's interception, disclosure, or commercial use of his electronic communication.

105.    While using LiveChat on Goldstartool.com, Text did not disclose to Plaintiff Mejia that Text was intercepting, disclosing, or using his electronic communications for Text's own commercial purposes.

106.    While using LiveChat on Sunbeltrentals.com, Plaintiff Mejia was not asked to consent to Text's interception, disclosure, or commercial use of his electronic communication.

1666907

107. While using LiveChat on Sunbeltrentals.com, Text did not disclose to Plaintiff Mejia that Text was intercepting, disclosing, or using his electronic communications for Text's own commercial purposes.

### 2. *Plaintiff Matthew Bordy*

108. Plaintiff Matthew Bordy visited the websites JJsHouse.com and PointClickCare.com. Both are websites enabled with LiveChat.

109. Plaintiff Bordy accessed the LiveChat software from his personal electronic device to communicate with customer service agents working for JJsHouse.com and PointClickCare.com.

110. During those visits, Text intercepted the content of Plaintiff Bordy's electronic communications with JJsHouse.com's and PointClickCare.com's customer service agents in real time.

111. While using LiveChat on JJsHouse.com, Plaintiff Bordy was not asked to consent to Text's interception, disclosure, or commercial use of his electronic communication.

112. While using LiveChat on JJsHouse.com, Text did not disclose to Plaintiff Bordy that Text's was intercepting, disclosing, or using his electronic communications for Text's own commercial purposes.

113. While using LiveChat on PointClickCare.com, Plaintiff Bordy was not asked to consent to Text's interception, disclosure, or commercial use of his electronic communication.

114. While using LiveChat on PointClickCare.com, Text did not disclose to Plaintiff Bordy that Text's was intercepting, disclosing, or using his electronic communications.

115. Both Plaintiffs Juan Mejia and Matthew Bordy suffered an invasion of privacy at the hands of Text and a violation of their rights under the FSCA due to Text's covert interception

20

1666907

and surveillance of their private conversations with the LiveChat-enabled websites using their personal electronic devices.

## V.      TOLLING OF THE STATUTE OF LIMITATIONS

116.    Within the time period of any applicable statutes of limitation,[1] Plaintiffs and Class members could not have discovered, through the exercise of reasonable due diligence, that Defendant was surreptitiously intercepting their chat communications in real time.

117.    Text did not inform Plaintiffs and Class members that Text was intercepting Plaintiffs' and Class members' electronic communications, disclosing those electronic communications to third parties, or using those electronic communications for Text's commercial purposes.

118.    Text did not request or obtain the Plaintiffs and Class members' consent to intercept their communications, disclose those electronic communications to third parties, or use those electronic communications for Text's commercial purposes.

119.    Plaintiffs and the Class members had the reasonable expectation that their communications, sent from their personal electronic devices, were between solely them and the business they contacted.

120.    Because Text's concealed its conduct from website visitors, did not disclose its conduct, or obtain the Plaintiffs and Class members' consent to its conduct, neither Plaintiffs nor Class members had a reasonable opportunity to discover Text's violations of the FSCA.

121.    Accordingly, all applicable limitations periods are tolled by operation of the delayed discovery rule.

---

[1] Section 934.10(3), Florida Statutes, provides: "A civil action under this section may not be commenced later than 2 years after the date upon which the claimant first has a reasonable opportunity to discover the violation."

1666907

## VI.      CLASS ACTION ALLEGATIONS

**Class Definition**

122.    Plaintiffs bring this action on their own behalf, and on behalf of all persons similarly situated, pursuant to Rules 23(a) and (b)(2) or (b)(3) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. Plaintiffs seek to certify the following proposed class:

> All Florida residents who used Text's live chat function while in Florida, and whose electronic communications were intercepted by Text without their consent.

123.    Excluded from the class are Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

124.    Plaintiffs reserve the right to modify the foregoing Class definition based on further investigation and discovery before the Court determines whether class certification is appropriate.

**Numerosity**

125.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that individual joinder is impracticable. On information and belief, members number in the thousands.

126.    While the precise number and identities of Class Members are unknown to Plaintiffs, Text's LiveChat software operates on at least 35,000 websites worldwide and processes approximately seventy-five million chats each month, including chat messages sent by persons in Florida.  *See* https://www.livechat.com/customers/.

22

1666907

127.   The Class members may be determined through discovery, including through Defendant's records.

**Commonality**

128.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because there are questions of law and fact that are common to the class. These common questions predominate over any questions affecting any individual Class members. These questions include without limitation:

a.   Whether Text intentionally intercepted Class members' chat communications with website operators;

b.   Whether Text disclosed the contents of Class members' intercepted electronic communications to additional third-parties;

c.   Whether Text used the contents of Class members' intercepted electronic communications for its own commercial purposes, including training artificial intelligence models and improving its products and services;

d.   Whether Text's LiveChat software intercepted Class members' electronic communications through the "Sneak Peek" feature;

e.   Whether Text was a third party to the communications between Class members and website operators;

f.   Whether Text's interception, disclosure, and use of Class members' electronic communications occurred contemporaneously with the transmission of those communications;

g.   Whether Plaintiffs or the Class members consented to the interception and use of their communications; and

23

1666907

    h.   Whether Text's conduct violated the FSCA, including Fla. Stat. § 934.03(1)(a), (c), and (d), and whether Class Members are entitled to actual and/or statutory damages, punitive damages, injunctive relief, and attorneys' fees under Fla. Stat. § 934.10.

**Typicality**

129.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same wrongful conduct. Each Class member visited a LiveChat-Enabled website from their personal electronic device and had their electronic communications intercepted and recorded by Text through the LiveChat function without their consent. The relief Plaintiffs seek in this action is typical of the relief sought for the absent Class members.

**Adequacy**

130.    Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs are committed to the vigorous prosecution of this action and there is no hostility or conflict between or among Plaintiffs and the unnamed Class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

131.    Plaintiffs have retained competent counsel with substantial experience in complex class litigation and FSCA claims. Plaintiffs and their counsel do not have any interests adverse to the Class members and will fairly and adequately protect the interest of all Class members.

**Superiority**

132.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class

1666907

members.  The joinder of individual Class members is impracticable because of the vast number of Class members who have interacted with Defendant's LiveChat software.

133.    Because the monetary damages available to each individual Class member are relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions. The burden imposed on the judicial system by individual litigation, and to the Defendant, by even a small fraction of the Class members, would be enormous.

134.    Individual Class members may lack the resources to prosecute complex claims against Defendant, and individual litigation would create duplicative burdens, increased expense, and a risk of inconsistent judgments.

135.    In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, far better conserves the resources of both the judiciary and the parties, and far more effectively protects the rights of each Class member. The benefits to the legitimate interests of the parties, the court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is simply superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

136.    Plaintiffs are unaware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.  The Court may, on motion of Plaintiffs or on its own

determination, utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses. Fed. R. Civ. P. 23(b)(2)

137.    Text has acted or failed to act in a manner generally applicable to the Class members in the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class.

## VII.        CAUSES OF ACTION

### COUNT I
### Violation of the Florida Security of Communications Act
### §934.01 – §934.10, Florida Statutes

138.    Plaintiffs incorporate paragraphs 1–137 as if fully set forth herein.

139.    Plaintiffs bring this claim individually and on behalf of the putative Class members against Defendant.

140.    The FSCA was enacted to safeguard the privacy of innocent people, and protect the privacy of wire, oral, and electronic communications in Florida.

141.    The FSCA, defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce." Fla. Stat. § 934.02(12).

142.    The term "intercept" under the FSCA is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Fla. Stat. § 934.02(3).

143.    The FSCA prohibits any person from:

26

a. intentionally intercepting, endeavoring to intercept, or procuring another to intercept any wire, oral, or electronic communication;

b. intentionally disclosing the contents of any intercepted wire, oral, or electronic communication, knowing or having reason to know the information was unlawfully obtained; or

c. intentionally using the contents of any intercepted wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication. Fla. Stat. § 934.03(1)(a), (c), (d).

144. Text's LiveChat software is an "electronic, mechanical, or other device" within the meaning of Fla. Stat. § 934.02(4), used to engage in the prohibited conduct at issue here. *See e.g.*, *United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (noting that software can constitute a "device" in the wiretapping context).

145. Text was a third party to any communication between Plaintiffs and Class members, on the one hand, and the business owners, on the other.

146. At all relevant times, Text intentionally intercepted, used, and disclosed the electronic communications between Plaintiffs and the Class Members on the one hand, and businesses' websites on the other hand.

147. The communications from Plaintiffs and Class members to websites through the LiveChat software constitute "electronic communications" within the meaning of Fla. Stat. § 934.02(12) because messages and communications sent through LiveChat constitute transfers of signs, signals, writing, data, or intelligence of any nature transmitted in whole or in part by a wire,

27

radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce."

148. The "contents" of these communications, as defined by Fla. Stat. § 934.02(7), include the substance, import, and meaning of the chat messages sent to the businesses as well as those being typed but not yet sent as captured by the LiveChat Sneak Peek function.

149. At all relevant times, using its LiveChat software, Defendant intentionally and contemporaneously intercepted the electronic communications of Plaintiffs and Class members that were being directed from their personal electronic devices to business of the websites they had visited.

150. At all relevant times, by using its LiveChat software, Text intentionally, and without the consent of all parties to the communication, intercepted the contents of electronic communications of Plaintiffs and Class members, on the one hand, and the business websites on the other, while the electronic communications were in transit.

151. Fla. Stat. §934.03(2)(d) provides that interception is unlawful where all parties to the communications have not given prior consent.

152. It was not disclosed to Plaintiffs and the Class members that their electronic communications were being contemporaneously intercepted, used by Text for Text's own commercial purposes, or disclosed to additional third parties by Text, nor did Plaintiffs and the Class members provide their prior consent to having their electronic communications intercepted, used by Text for Text's own commercial purposes, or disclosed to additional third parties.

153. Plaintiffs and the Class members had a reasonable expectation that their electronic communications, sent via their personal electronic devices, were private and would not be

28

1666907

intercepted by Defendant, reasonably believing their electronic communications would only be seen by the businesses they intended to communicate with and not by a third party like Text.

154.   Because the LiveChat-enabled websites did not disclose that Text intercepts, uses, and discloses the contents of intercepted communications sent through LiveChat, rather than merely providing software for the website, Plaintiffs and Class members were unaware that their electronic communications were being intercepted by Text.

155.   The contemporaneous interception occurred in Florida, where Plaintiffs and Class members accessed the LiveChat-enabled websites and where Text's live chat function routed their electronic communications to Text's servers.

156.   Plaintiffs and Class members did not give prior consent to having their electronic communications intercepted by Text.

157.   The mere use of a chat widget that does not clearly disclose Text's role as a third-party intermediary that intercepts, uses for Text's own commercial purposes, and discloses electronic communications in real time does not constitute the prior consent that Fla. Stat. § 934.03(2)(d) requires.

158.   Visitors to LiveChat-enabled websites, like Plaintiffs and the Class members, who initiate a chat with the LiveChat-enabled websites' customer service teams from their electronic devices reasonably expect to be communicating with that company, not with Text or any additional third party to whom Text discloses the contents of communications intercepted through the LiveChat software.

159.   The sole indication of Text's involvement is the LiveChat logo embedded within the chat widget, which does not inform website visitors that their communications are being intercepted, used for Text's own commercial purposes, and disclosed to additional third parties.

29

1666907

160.   Nor can Defendant avail itself of the exception set forth in Fla. Stat. § 934.03(3)(b)(3), which permits a provider to divulge the contents of a communication "to a person employed or authorized, or whose facilities are used, to forward such communication to its destination."

161.   Text's LiveChat platform does not merely "forward" the contents of Plaintiffs and the Class members' communications to the businesses, rather its interception structure, including the Sneak Peek feature, contemporaneously intercepts, processes, structures, stores, and analyzes the communications which are then used for Text's own commercial purposes and disclosed to additional third parties. This conduct exceeds the scope of "forwarding" of a communication to its destination.

162.   Text's data collection and commercial use of intercepted communications far exceeds what any provider forwarding a communication to its destination could contemplate, placing Text's activities outside the scope of any exception under Fla. Stat. § 934.03(3)(b).

163.   Defendant's interception, disclosure, and use of the contents of Plaintiffs and the Class members' electronic communications violated their statutorily protected privacy rights under Florida law.

164.   In summary:

a.   Text violated Fla. Stat. § 934.03(1)(a) each time Text, through the LiveChat software and its Sneak Peek function, acquired the contents of Plaintiffs' and Class members' electronic communications—including unfinished, unsent, and deleted messages—in real time as they were being typed and transmitted to Text's servers, without knowledge or consent of the communicating parties.

30

b. Text violated Fla. Stat. § 934.03(1)(c) each time Text, through the LiveChat software's webhook functionality, caused the contents of Plaintiffs' and Class members' intercepted electronic communications to be automatically redistributed in real time to third-parties while knowing that the electronic communications were obtained through Text's interception of the Plaintiffs and Class members' electronic communications.

c. Text violated Fla. Stat. § 934.03(1)(d) each time Text exploited the contents of Plaintiffs' and Class members' intercepted electronic communications by using such communications to train artificial intelligence and machine learning models, analyze customer behavior patterns, and improve Text's proprietary products and services while knowing or having reason to know that such communications were obtained through Text's interception of the Plaintiffs' and Class members' electronic communications.

165. As a result, Plaintiffs and the Class members seek all relief available under Fla. Stat. § 934.10, including preliminary and equitable relief, actual damages (not less than liquidated damages at the rate of $100 per day per violation or $1,000, whichever is higher), punitive damages, and reasonable attorneys' fees and litigation costs.

## COUNT II
### Invasion of Privacy

166. Plaintiffs incorporate paragraphs 1–137 as if fully set forth herein.

167. Defendant intentionally intruded upon Plaintiffs' private electronic systems (i.e., their phone, computer, or other electronic device) by surreptitiously intercepting, viewing, recording, storing, disclosing, and using written electronic communications Plaintiffs typed into

31

private live chat functions. Defendant did so to collect, monetize, and disseminate Plaintiffs' personally identifying information.

168.    Plaintiffs and the Class members had a reasonable expectation that: (a) the electronic communications they typed into the live chat function *but never sent* would remain wholly private and not be viewed by *anyone*; and (b) the words they typed into the live chat function and sent to the customer service agent on the other end of the chat conversation would remain wholly private between Plaintiffs and the customer service agent.

169.    Plaintiffs and the Class members had a reasonable expectation that their electronic communications sent from their own personal devices using the live chat function were private and would not be intercepted by Defendant. Plaintiffs and Class members reasonably believed their electronic communications would only be seen by the businesses whose websites they entered and with whom Plaintiffs and Class members intended to communicate with.

170.    Because the LiveChat-enabled websites did not disclose that Text intercepts, uses, and discloses the contents of intercepted communications sent through the live chat function, , rather than merely providing software for the website, Plaintiffs and Class members were unaware that their electronic communications were being intercepted by Text.

171.    Defendant did not request nor obtain Plaintiffs' and Class members' consent before intercepting, monetizing, and disseminating Plaintiffs' and Class members' private live chat conversations and personally identifying information.

172.    A reasonable person would be highly offended upon learning that Defendant intercepts, uses, and discloses the contents of intercepted communications sent through the live chat function on LiveChat-enabled websites.

32

173.    As a result of Defendant's unlawful actions, Plaintiffs and the Class members have been irreparably harmed including, without limitation, by being deprived of the right to exercise meaningful control over the use and dissemination of their personally identifying information, including contents of their electronic communications, IP address, name, email address, address, zip code, and consumer preferences.

174.    This harm also equates to actual, concrete, and quantifiable damages in the form of the monetary value Defendant derives from Plaintiffs' and the Class members' personal information without properly compensating Plaintiffs and the Class members for the same.

175.    The nature/extent of the personal information disclosed, and the manner in which it is used and shared, Plaintiffs' and the Class members' actual damages may be in the thousands of dollars.

176.    As a result of Defendant's invasions of privacy, Plaintiffs and the Class members are entitled to recover such amounts as the jury in this case determines appropriate to vindicate the privacy rights of Plaintiffs and the Class members, punitive damages in an amount to be determined by a jury in this case, and disgorgement of all profits generated by Defendant as a result of its use and deployment of the software at issue in this case. Plaintiffs further seek injunctive relief to prevent Defendant's use of their private communications.

## COUNT III
### Unjust Enrichment

177.    Plaintiffs incorporate paragraphs 1–137 as if fully set forth herein.

178.    Defendant received a benefit from Plaintiffs and the Class members in the form of electronic data that Defendant intercepted from the Plaintiffs and Class members communications.

179.    Defendant had knowledge of the benefit that it derived. On information and belief, Defendant has detailed analyses regarding revenues generated by virtue of its "Sneak Peak"

33

1666907

feature, webhook systems, and related scripts, codes, features, and systems. As such, Defendant is aware that this benefit is derived by taking data that belongs to Plaintiffs and the Class members.

180.    Defendant has accepted and retained the benefits derived from personal data taken from Plaintiffs and the Class members and has used those items to generate and increase revenues and gain a commercial and competitive advantage in the industry over its competitors.

181.    It would be wholly inequitable for Defendant to retain the financial benefits of its usurpation of Plaintiffs and the Class Members' electronic communications, particularly since Defendant's actions were unauthorized, without consent, and violate principles of fairness, fair play, and equity.

182.    Plaintiffs and the Class members are entitled to restitution in the form of all profits derived by usurping their electronic communications, as well as disgorgement of all profits generated by Defendant as a result of its interception of data from Website visitors.

## VIII.    PRAYER FOR RELIEF

183.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class, naming Plaintiffs as the representatives of the Class, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

(b) For an order declaring that the Defendant's conduct violates the Florida Security of Communications Act, Chapter 934, Florida Statutes;

(c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d) For liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher, pursuant to Fla. Stat. § 934.10(1)(b);

1666907

(e) For punitive damages in amounts to be determined by the Court and/or jury pursuant to Fla. Stat. § 934.10(1)(c);

(f) For prejudgment interest on all amounts awarded;

(g) For injunctive relief pursuant to Fla. Stat. § 934.10(1)(a), including but not limited to: (i) requiring Text to obtain affirmative, informed consent from all users before intercepting their communications through LiveChat; (ii) requiring Text to cease using the Sneak Peek feature to capture pre-transmission keystrokes without user consent; and (iii) requiring Text to delete all communications previously intercepted without the consent of all parties;

(h) For an order awarding Plaintiffs and the Class and Subclass their reasonable attorney's fees and expenses and costs of suit pursuant to Fla. Stat. § 934.10(1)(d);

(i) Disgorgement of profits related to the Defendant's unjust enrichment from intercepting the Plaintiffs' and Class members' private communications; and

(j) For such other and further relief as this Court may deem just and proper.

## IX.    JURY DEMAND

184.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all matters so triable.

Dated: June 17, 2026                    Respectfully submitted,


                                        /s/ Robert J. Neary
                                        Robert J. Neary, Esq.
                                        Florida Bar No. 81712
                                        Michael R. Lorigas, Esq.
                                        Florida Bar No. 123597
                                        Cameron A. Moody, Esq.
                                        Florida Bar No.  1058880

35

1666907

**KOZYAK TROPIN THROCKMORTON LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
rn@kttlaw.com
mlorigas@kttlaw.com
cmoody@kttlaw.com

Veronika Balbuzanova, Esq.
Florida Bar No. 1018462
Abdul-Sumi Dalal, Esq.
Florida Bar No.  84110
**JOHNSON DALAL**
111 N. Pine Island Road, Suite 105
Plantation, FL 33324
Tel: (561) 954-5455
Fax: (954) 507-4502
VB@JohnsonDalal.com
AD@JohnsonDalal.com

*Counsel for Plaintiffs*

36

1666907